**NOT FOR PUBLICATION**                                                                  **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER RAZO, | : |
| | : Civil Action No. 07-cv-05745 (SDW) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **OPINION** |
| NORDIC EMPRESS SHIPPING LTD., | : |
| ROYAL CARIBBEAN CRUISES LTD, | : |
| et al., | : |
| | : July 24, 2008 |
| Defendants. | : |

**WIGENTON, District Judge**

Before the Court is Alexander Razo's ("Plaintiff") motion to remand ("Plaintiff's Motion"),[1] and a motion by defendants Nordic Empress Shipping Inc. ("Nordic") and Royal Caribbean Cruises Ltd. ("Royal Caribbean"), et al., (collectively, "Defendants")[2] in support of removal and to compel arbitration ("Defendants' Motion").[3] The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78.

For the reasons discussed below, the Court grants Defendants' Motion as to Royal Caribbean. The Court will compel arbitration as to Plaintiff's claims against Royal Caribbean, but claims against

---

[1] This motion corresponds to docket entry # 7.

[2] As stated in the Complaint, ("Compl.") Plaintiff's claims against Royal Caribbean includes Royal Caribbean Cruises Ltd. a/k/a Royal Caribbean Cruises, Ltd., d/b/a/ Royal Caribbean Cruise Line, d/b/a Royal Caribbean International, Royal Caribbean International, Inc., Royal Caribbean Cruises, Inc., and John Does "A," "B," and "C." (Compl. ¶¶ 2-23.)

[3] This motion corresponds to docket entry # 3.

Nordic will be remanded.

**I. Jurisdiction**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201 et seq., confers federal subject matter jurisdiction upon a district court when a case is "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Additionally, 9 U.S.C. § 205 permits removal for disputes relating to an arbitration agreement covered by the Convention.[4]

**II. Background**

Plaintiff, a citizen of the Philippines, was employed on board the cruise ship M/V Empress of the Seas (formerly M/V Nordic Empress) on September 7, 2004 when he was allegedly injured during a lifeboat drill. (Pl.'s Br. 2; Def.'s Pet. Notice Removal Ex. 1; Compl. ¶ 31; Def.'s November 28, 2007 Memo. Law Compel Arbit. at 2 ("Def.'s Nov. Memo"). During the drill, Plaintiff sat in a lifeboat hoisted approximately fifty feet in the air that suddenly crashed into the water below, causing Plaintiff's alleged injuries.[5] (Compl. ¶ 5; Pl.'s Ex. 16.)

Royal Caribbean was the operator and bareboat charterer of the M/V Nordic Empress, and

---

[4] Plaintiff contests this Court's removal jurisdiction and invocation of federal question jurisdiction pursuant to Title 9. (Pl.'s Br. 2-3.) However, this Court has jurisdiction as it finds that Plaintiff's dispute relates to an arbitration agreement covered by the Convention.

[5] Plaintiff claims the following injuries: injury to his internal organs, nervous system, muscles, nerves, tendons, blood vessels, and ligaments, including fractured vertebrae, a herniated disc, a fractured spinous process, a sacral fracture, a wrist fracture, and traumatic brain injury, along with other physical complaints. (Compl. ¶ 39.)

Nordic was its owner.[6] (Def.'s Nov. Memo. 2; Def.'s February 5, 2008 Memo. Law Compel Arbit. 20. ("Def.'s Feb. Memo."); Declaration of Bradley H. Stein.) Royal Caribbean hired Plaintiff under a Philippine Overseas and Employment Administration ("POEA") standard contract for an eight month term, signed January 27, 2004 ("Contract").[7] (Def.'s Pet. Notice Removal Ex. 3, Decl. Del Rosario, Tab A [hereinafter "Del Rosario"].) Paragraph two of the Contract states that its terms and conditions will be observed "in accordance with Department Order No. 4 and Memorandum Circular No. 09." (*Id.*, Tab A.) Department Order No. 4 incorporates the "Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean-Going Vessels" ("POEA Standard Terms and Conditions"). (*Id.*, Tab C.)

The POEA Standard Terms and Conditions Section 29, titled "Dispute Settlement Procedures," requires arbitration: "[i]n cases of claims and disputes arising from [seafaring] employment, the parties covered by a collective bargaining agreement, shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators."[8] (*Id.*, Tab A.) Section 31 of the POEA Standard Terms and Conditions, "Applicable Law," states that "[a]ny unresolved dispute, claim or grievance arising out of or in connection with this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines,

---

[6] "A 'bareboat' charter or 'demise' charter exists whenever the: vessel is chartered or 'leased' to another who takes possession, custody and control of the vessel." *Neely v. Club Med Management Services, Inc.* 63 F.3d 166, 212 (3d Cir. 1995) (quoting 2 Martin J. Norris, The Law of Seamen § 30:14, at 372 (4th ed. 1985))

[7] The term commenced with Plaintiff's departure from the Philippines in March 2004. *(See* Del Rosario, Tab C, Section 2A.)

[8] Plaintiff was employed under a collective bargaining agreement between Royal Caribbean and the Norwegian Seamen's Union, which covered "Filipino Deck and Engine Personnel Serving On Board Cruise Vessels Registered in the Norwegian International Ship Register and Managed by Royal Caribbean Cruises Ltd." (Del Rosario, Tab B.) Under Section 29 of the POEA Standard Terms and Conditions, employment covered by a collective bargaining agreement must be submitted for arbitration. (Del Rosario, Tab A.)

international conventions, treaties and covenants where the Philippines is a signatory." (*Id.*, Tab C.) According to Section 5 of the Contract, "all claims disputes or controversies that may arise from this employment contract shall be brought by the herein parties exclusively before the proper courts in Metro Manila." (*Id.*, Tab A.)

The POEA Standard Terms and Conditions provides in Section 20(B) a fixed schedule of benefits for seafaring employees under the title "Compensation and Benefits for Injury or Illness." Section 20(G) states:

> The seafarer or his successor in interest acknowledges that payment for injury, illness, incapacity, disability or death of the seafarer under this contract shall cover all claims arising from or in the course of the seafarer's employment, including but not limited to damages arising from the contract, tort, fault or negligence under the laws of the Philippines or any other country.

(*Id.*, Tab C.) The POEA Standard Terms and Conditions provides a schedule for additional, various personal injuries in Section 32.

Royal Caribbean commenced arbitration proceedings in the Philippines pursuant to the arbitration clause on May 31, 2007. (Def.'s Pet. Notice Removal Ex. 4, Tab A.)

On September 6, 2007, Plaintiff filed suit in the State of New Jersey asserting claims for Jones Act negligence, unseaworthiness, gross negligence, punitive damages, and maintenance and cure. (Compl. ¶¶ 35-49.) Defendants petitioned for removal to federal court on November 28, 2007.

**III. Legal Standard**

The United States implemented the Convention in 1970 through the enactment of 9 U.S.C.

4

§§ 201-208 [hereinafter "Convention Act"].[9]  Under § 205 of the Convention Act,

> [w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.  A court with jurisdiction under the Convention Act "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 206.  District courts have removal jurisdiction and may compel arbitration if the pending dispute falls under the Convention.  *Francisco v. Stolt*, 293 F.3d 270, 271 (5th Cir. 2002); *Bautista v. Star Cruises*, 396 F.3d 1289, 1292 (11th Cir. 2005).

An arbitration agreement falls under the Convention if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen.  *Francisco*, 293 F.3d at 273; *Bautista*, 396 F.3d at 1294.  The Convention requires arbitration if these requirements are met.  *Francisco*, 293 F.3d at 273; *Bautista*, 396 F.3d at 1294.

**IV. Discussion**

*A. The Convention and Royal Caribbean*

As discussed below, the arbitration agreement in the Contract falls under the Convention as each of the foregoing four elements is satisfied.

---

[9] The Philippines is also a signatory of the Convention.  9 U.S.C. § 201, Historical and Statutory Notes (*see* "States which are parties" notes following text of Convention indicating signatories.)

*1. A written arbitration agreement exists*

The Convention permits removal to federal court only if a written arbitration agreement exists. *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F.Supp.2d 1327, 1329-30 (S.D.Fla. 2003). This Court finds that the Contract is a written arbitration agreement. (Del Rosario, Tab A.) The Contract is an approved POEA contract that incorporates the POEA Standard Terms and Conditions in Section 2 .[10] (Del Rosario, Tab A.) Section 29 of the POEA Standard Terms and Conditions states that "[i]n cases of claims and disputes arising from [seafaring] employment, the parties covered by a collective bargaining agreement, shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators." (*Id.* ¶¶ 10-13.) The incorporation of Section 29 into an agreement requires arbitration of employment-related disputes, not simply contract claims. *Francisco*, 293 F.3d at 278.

Plaintiff argues that the statement in Section 5 that "all claims disputes or controversies that may arise from this employment contract shall be brought by the herein parties exclusively before the proper courts in Metro Manila" conflicts with the arbitration provision in Section 2 of the Contract.[11] (Del Rosario, Tab A.) However, the plain language of Section 5 does not conflict with Section 2. Specifically, as Defendants argue, it appears that Section 5 refers to the venue of the

---

[10] Plaintiff's Contract included the full text of the POEA Standard Terms and Conditions. (Def.'s Pet. Notice Removal Ex. 3, Decl. Del Rosario, Tab A.)

[11] Plaintiff also alleges that he should not be bound to arbitrate his claims in the Philippines because he was not able to negotiate the terms of the Contract. (Pl.'s Ex. 2, Affirmation of Alexander Razo, Jan. 14, 2008.) However, courts have held that a seafarer's allegations of unequal bargaining power are not a defense to enforcement of POEA Contract under the Convention. *See Bautista v. Star Cruises,* 396 F.3d 1289, 1363 (11th Cir. 2005)(noting that where the Philippine government has acted through the POEA to protect its citizens, Plaintiffs lack a factual basis to allege that [the shipowner] took advantage of them in negotiating the terms of their contracts.)

arbitration.[12]  Moreover, Section 31 of the POEA Standard Terms and Conditions, which makes the laws of the Republic of the Philippines the applicable law, is incorporated into Section 2 of the Contract.  Thus, contrary to Plaintiff's arguments, when read together, Section 5 does not supersede the arbitration provision in Section 2 of the Contract, but instead evidences that the parties contractually agreed to a particular venue for arbitration.[13]

Therefore, a written agreement requiring arbitration in the Philippines exists between Plaintiff and Royal Caribbean.[14]

*2. Agreement provides for arbitration in the territory of a Convention Signatory*

The second element is a requirement that "the agreement provides for arbitration in the territory of a Convention signatory." *Francisco*, 293 F.3d at 273.  The Contract requires proceedings in Metro Manilla, and the United States and the Republic of the Philippines are both signatories of the Convention,  therefore the second element is satisfied.  9 U.S.C. § 201, Historical and Statutory Notes.

*3. Agreement arises out of a commercial relationship*

The third element of the Convention Act requires that the agreement arise out of a

---

[12] Defendants allege that the phrase "proper courts of Metro Manila" can be reasonably interpreted to mean the labor courts, which under Philippine law govern Plaintiff's claims. (Def.'s Feb. 19, 2008 Reply Memo.)

[13] *See, e.g., Cromalloy Aeroservices and Arab Republic of Egypt*, 939 F.Supp. 907, 912 (D.D.C. 1996)(finding that the clause in plaintiff's contract that referenced Cairo as "the court of arbitration" referred to the choice of forum for the arbitration proceedings and was supported by an earlier clause that designated that the contract was governed by Egyptian law and the parties would arbitrate in Cairo.); *Amizola v. Dolphin Shipowner, S.A.,* 354 F.Supp.2d 689 (E.D.La. 2004)(finding that the plaintiff was required to arbitrate his claim in the Philippines even though Sections 29 and 30 of the POEA Standard Terms and Conditions in plaintiff's contract did not state where the arbitration would be held, but directed that the proceedings would be governed by Philippine law.)

[14] The Court will discuss the impact of this written agreement as it pertains to Nordic in the later sections.

commercial legal relationship. *Francisco*, 293 F.3d at 273. Title 9 of the United States Code has two chapters relevant to the question of whether Plaintiff's Contract was commercial: Chapter 1, which contains the Federal Arbitration Act ("Arbitration Act"), and Chapter 2, the Convention Act.

The Convention Act is broadly worded, requiring that contracting states "recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." 9 U.S.C. § 201, Historical and Statutory Notes, Article II § 1. When the United States ratified the Convention in 1970, it explained that "[t]he United States of America will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the United States." 9 U.S.C. § 201, Historical and Statutory Notes, n. 29.

Plaintiff asserts that "commercial" is defined in Section 1 of the Arbitration Act. (Pl.'s Br. 17-25.) Section 1 of the Arbitration Act expressly excludes "contracts of employment" of seamen from the rest of the Arbitration Act's provisions which generally recognize the validity of arbitration provisions in maritime commerce. 9 U.S.C. § 2. *See also* 9 U.S.C. § 1; *Francisco*, 293 F.3d at 273-74.

The exclusion of seamen employment contracts in the Arbitration Act is not applicable to the Convention Act, however, as it is in conflict with the Convention Act. *Francisco*, 293 F.3d at 274. As the Convention Act applies to commercial legal relationships without exception, it conflicts with the Arbitration Act's seamen exception. *Bautista*, 396 F.3d at 1299. As explained by the Fifth Circuit:

> In short, the language of the Convention, the ratifying language, and the Convention

> Act implementing the Convention do not recognize an exception for seamen employment contracts. On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered "commercial," and we conclude that an employment contract is "commercial."

*Francisco*, 293 F.3d at 274. As there is no exclusion for seamans' contracts under the Convention, Plaintiff's Contract is therefore commercial, and the third element is satisfied.[15]

*4. Party to the agreement is not an American citizen*

The fourth required element requires that "a party to the agreement is not an American citizen." *Francisco*, 293 F.3d at 273. Plaintiff is a citizen of the Philippines and thus this element is also satisfied. (Pl.'s Br. 2)

*5. Plaintiff's claims against Royal Caribbean are properly removed and arbitration is properly compelled*

The arbitration agreement in Plaintiff's Contract falls under the Convention as each of the four elements is satisfied, and this Court is required by the Convention to compel arbitration. Thus, Plaintiff's claims against Royal Caribbean as a signatory to the Contract (Del Rosario, Tab A) will be properly removed and this Court compels arbitration in the Philippines according to Plaintiff's Contract.

B. Claims against Nordic

  1. *Plaintiff alleges separate claims against Nordic for remand*

Plaintiff contends that Nordic "had a duty independent of Royal [Caribbean] to provide a seaworthy vessel, which it breached, and there is no arbitration agreement between the shipowner

---

[15] When interpreting statutes, "[c]ourts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress." *Hubbard v. United States*, 514 U.S. 695, 708 (1995). Thus, this Court will not engage in a discussion of Plaintiff's legislative history arguments.

9

and Mr. Razo."[16] (Pl.'s Br. 5.)  Plaintiff's employer, Royal Caribbean, was the bareboat charterer of the vessel at the time of injury (Declaration of Bradley H. Stein).[17] In a bareboat charter the charterer is given full possession and control of the vessel for the period of the charter. *Reed v. S.S. Yaka*, 373 U.S. 410, 414-15 (U.S. 1963)(reversed on other grounds).  The Supreme Court held that "a shipowner's obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or by the absence of contracts and that the shipowner's obligation is rooted, not in contracts, but in the hazards of the work." *Id.*  Moreover, the vessel owner may still be liable for injuries that existed before commencement of the charter if the vessel is unseaworthy. *Haskins v. Point Towing Co.,* 421 F.2d 532 (3d Cir. 1970).  Therefore, Nordic can be liable to Plaintiff if the Empress of the Seas was unseaworthy.  Since the issue of seaworthiness is a factual one, Plaintiff argues that claims against Nordic should be remanded.

Additionally, Article II of the Convention "imposes a prerequisite on a party asking the court to compel arbitration: it requires that the party bring the court the written agreement." *Czarina L.L.C. v. W.F. Poe Syndicate,* 358 F.3d 1286, 1291 (11th Cir. 2004).  Courts have dismissed an action if the party has failed to satisfy the in-writing prerequisite. *Kahn Lucas Lancaster v. Lark Int'l*, 186 F.3d 210, 218 (2d Cir. N.Y. 1999).  As a result of this requirement, a valid arbitration

---

[16] This Court is also aware of the companion litigation in Hudson County Superior Court, *Razo v. Umoe Schat Harding,* Docket # L-3562-06, where Plaintiff contends that irrespective of any charter agreements, "the vessel and its appurtenances were unseaworthy" as "the lifeboat and its affiliated systems were defectively designed and manufactured." (Pl.'s Br. 5.)

[17] As previously noted, "[a] 'bareboat' charter or 'demise' charter exists whenever the: vessel is chartered or 'leased' to another who takes possession, custody and control of the vessel." *Neely,* 63 F.3d at 212 (3d Cir. 1995) (quoting 2 Martin J. Norris, The Law of Seamen § 30:14, at 372 (4th ed. 1985)). Further, "[t]he master is hired and paid by the charterer and becomes the agent and representative of the charterer. The operating expenses of the vessel, such as wages, fuel, subsistence, wharfage charges, etc., are paid by the charterer. The owner surrenders entire control and possession of the vessel and subsequent control over its navigation to the bareboat charterer, who becomes the owner pro hac vice." *Id.*

agreement must exist between Plaintiff and Nordic in order to remove the claim and compel arbitration. However, the record does not evidence that such agreement exists. Plaintiff is certain that there is no agreement and Nordic has not tendered such an agreement to the Court.[18] Therefore, based on the requirement of Article II of the Convention, and in the absence of an arbitration agreement between the parties, Plaintiff's claims against Nordic will be remanded.

C. *Additional arguments and claims*

    *1. Jones Act claims are removable*

Plaintiff contends that the Jones Act, 46 U.S.C. § 30104 ("Jones Act"), working through the anti-removal statute, 28 U.S.C. § 1445(a), may prevent removal when a seaman suffers personal injury during his employment. While Jones Act claims are generally not removable, *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir.1999), the Convention Act provides a separate basis for jurisdiction and does not recognize an exception for foreign seaman employment contracts. *Francisco*, 293 F.3d at 272; *Amizola v. Dolphin Shipowner, S.A.*, 354 F.Supp.2d 689, 694-95 (E.D.La. 2004); *Acosta*, 303 F.Supp.2d at 1331. The only limitation to removal under the Convention is that the legal relationship between the parties must be commercial. *See* supra, § IV.A.3. Therefore, a claim under the Jones Act does not defeat removal of a foreign arbitration claim under the Convention Act. *Francisco*, 293 F.3d at 272; *Amizola*, 354 F.Supp.2d at 694-965; *Acosta*, 303 F.Supp.2d at 1331 (holding Filipino arbitration agreement valid under United States law notwithstanding Plaintiff's Jones Act claim).

---

[18] Nordic bases its defense on the arbitration agreement that was signed between Plaintiff and Royal Caribbean. (Def.'s Feb. 19, 2008 Reply Memo at 22-23.) However, Nordic and Royal Caribbean were engaged in a bareboat charter and this Court finds that no principal-agent relationship existed between Nordic and Royal Caribbean to support this defense.

Plaintiff also contends that if the Jones Act applies, the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., prohibits a shipowner from imposing a contract that would take away a seafarer's rights to recovery, as a foreign forum selection clause would. (Pl.'s Br. 15.)  As explained above, the Jones Act does not apply, thus no right to recovery is denied.  Furthermore, forum selection clauses in international admiralty cases are presumed valid and enforceable unless they are shown to be unreasonable.  *M/S Bremen v. Zapata*, 407 U.S. 1, 15 (1972); *Carnival Cruise Lines, Inc, v. Shute*, 499 U.S. 585, 589 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985).  The forum selection clause in this Contract is not unreasonable, and identical clauses have been upheld against defenses identical to Plaintiff's argument.  *See In re Eternity Shipping, Ltd.*, 444 F.Supp.2d 347, 384 (D.Md. 2006) (holding forum selection clause specifying that arbitral body in the Philippines has exclusive jurisdiction over seaman's employment contract is enforceable and covers tort claims including death); *Acosta*, 303 F.Supp.2d at 1327.

Plaintiff's Jones Act arguments do not overcome the arbitration agreement.  Claims against Royal Caribbean will be subject to arbitration.

*2. There is no violation of 46 U.S.C. § 30509*

Plaintiff contends that 46 U.S.C. § 30509 prohibits arbitration of his injury claim. (Pl.'s Br. 29-30.)  This statute, however, was "enacted for the purpose of regulating the relationship between a common carrier of passengers and passengers with reference to duties, obligations and restrictions of the carrier in connection with its issuance of tickets and its liability to passengers for safe passage thereunder."  *Moore v. American Scantic Line*, 30 F.Supp. 843, 845 (S.D.N.Y. 1939); *see also Chervy v. Peninsular & Oriental Steam Nav. Co.*, 243 F.Supp. 655, 655 (N.D.Cal. 1964).  The statute is meant to protect passengers, not employees, and as such is inapplicable to Plaintiff's case.

*3. There is jurisdiction in the Philippines to hear arbitration*

Plaintiff contends that there is no jurisdiction to arbitrate his tort claims in the Philippines. (Pl.'s Br. 30.) Plaintiff's tort claims against Royal Caribbean are covered by the Contract's arbitration provision, as explained above, and are thus subject to "the original and exclusive jurisdiction" of arbitrators in Metro Manilla. (*See* supra, Discussion A(1)). *See also Francisco*, 293 F.3d at 278 (holding POEA arbitration provision covers all claims arising from employment); *Bautista*, 396 F.3d at 1356 (finding tort claims arose out of employment contract and are thus subject to arbitration under Section 29 of the POEA Standard Terms and Conditions.)

*4. The doctrine of forum non conveniens does not apply*

Plaintiff contends that this Court should deny arbitration through the doctrine of forum non conveniens. (Pl.'s Br. 37-39.) Under the doctrine of forum non conveniens, when trial in plaintiff's chosen forum would disproportionately oppress defendant, and an alternative forum has jurisdiction, or when the chosen forum is inappropriate due to the court's own administrative or legal problems, a court may dismiss the case even if jurisdiction and venue are established. *American Dredging Co. v. Miller*, 510 U.S. 443, 448-49 (1994) (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981)). Thus, on a forum non conveniens motion, the chosen court declines to exercise its own jurisdiction; the chosen court does not deny the jurisdiction of the alternative forum. *Id.* Accordingly, under the doctrine of forum non conveniens, only a forum in the Philippines may decline to exercise jurisdiction in the Philippines. *See, e.g., Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.5 (2d Cir. 1998). Furthermore, according to the above doctrine, a forum non conveniens motion must be brought by Defendants, not Plaintiff. *See, e.g., American Dredging Co.*, 510 U.S. at 448-49. Therefore the

doctrine of forum non conveniens is inapplicable to Plaintiff's case.

*5. Additional Defendants are removed and arbitration is compelled*

As described above, Section 205 of the Convention Act states that defendants may remove an action where the subject matter relates to an arbitration agreement falling under the Convention. 9 U.S.C. § 205. As the Court holds that the subject matter relates to an agreement falling under the Convention, claims against Royal Caribbean and related defendants are compelled to arbitration in the Philippines. Claims against Nordic are remanded.

**V. Conclusion**

For the foregoing reasons, the Court grants Defendants' request for removal and request to compel arbitration as to Royal Caribbean, but grants Plaintiff's request to remand claims as to Nordic.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.